[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

No. 03-16180

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 27, 2005
THOMAS K. KAHN
CLERK

D. C. Docket Nos. 01-00435 CV-1-SPM & 01-00442-CV-1-S

LONNIE B. LEE, et al.,

                                        Plaintiffs-Appellants,

        versus

STATE OF FLORIDA,
DEPARTMENT OF CHILDREN
& FAMILY SERVICES,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(April 27, 2005)

Before EDMONDSON, Chief Judge, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

This case involves the State of Florida's extension of special retirement benefits to certain occupational classifications. African-American employees in the forensic units at Florida State Hospitals who held positions that were not granted the benefits filed a class action complaint alleging disparate impact discrimination. The Plaintiff-Appellants argued that the Legislature's inclusion of certain predominately white employment classes in the special risk membership violated Title VII. The district court granted the State of Florida Department of Children and Family Services's motion for summary judgment. We affirm.

## **BACKGROUND**

Under the Florida Retirement System ("FRS"), certain occupations are given special retirement benefits which provide, among other things, higher retirement accrual rates and a lower retirement age. Fla. Stat. § 121.0515. In 2000, the Legislature expanded the sectors of employment eligible for special benefits, creating a class of "special risk membership" ("SRM") in the FRS statute, in recognition that "certain categories of [employees] . . . are required as one of the

2

essential functions of their positions to perform work that is physically demanding . . ., or work that requires extraordinary agility and mental acuity." Fla. Stat. § 121.0515(1). Persons who 1) are employed in one of twenty-four classes listed in the statute[1] and 2) spend at least 75% of their time performing duties involving contact with patients or inmates, were afforded expanded coverage by the legislation. Fla. Stat. § 121.0515(2)(f).

A group of African-American employees ("Employees") in the forensic units at the Chattahoochee, Gainesville and Miami branches of the Florida State Hospital who spend at least 75% of their time performing duties involving contact with patients, but are not employed in any of the additional classifications, filed a class action complaint against the State of Florida and the Department of Children and Family Services ("Department") alleging disparate impact discrimination. They alleged that, at the time the statute went into effect, the forensic unit employed 1321 people, 172 of whom were made eligible for the special risk membership. The Employees noted that the award of SRM had a disparate impact

---

[1]The following list represents the classes afforded special risk membership in the statute: dietitian, public health nutrition consultant, psychological specialist, psychologist, senior psychologist, regional mental health consultant, psychological services director, pharmacist, senior pharmacist, dentist, senior dentist, registered nurse, senior registered nurse, registered nurse specialist, clinical associate, advanced registered nurse practitioner, advanced registered nurse practitioner specialist, registered nurse supervisor, senior registered nurse supervisor, registered nursing consultant, quality management program supervisor, executive nursing director, speech and hearing therapist, and pharmacy manager. Fla. Stat. § 121.0515(2)(f).

based on race: of the 172 eligible employees, 115 (67%) were white, whereas 783 (68.1%) of the 1149 non-eligible employees were black. The Employees alleged that they are exposed to the same risks and physical demands as persons serving in one of the statutorily delineated professions qualifying for SRM. The Employees argued that the State violates Title VII by including certain predominately white employment classes in the special risk membership, while excluding predominately black classes that are allegedly exposed to the same levels of risk.

The State argued that the positions in which plaintiffs were employed were not comparable to the 24 delineated positions. The State explained that the positions awarded SRM are composed of professional employees; they receive higher compensation,[2] which reflects "differences in education, training, licensure or certification." The State contended that the increase in benefits reflects these differences.

_____

[2]One expert found that "the average bi-weekly salary of the employees in the class codes that were moved to Special Risk in January 2001 [was] almost double the bi-weekly salary of the employees in the class codes that were not placed in Special Risk."

## DISCUSSION

Disparate impact theory "prohibits neutral employment practices which, while non-discriminatory on their face, visit an adverse, disproportionate impact on a statutorily-protected group." EEOC v. Joe's Stone Crab, 220 F.3d 1263, 1274 (11th Cir. 2000). To establish a prima facie case of disparate impact discrimination, a plaintiff must demonstrate 1) a specific, facially-neutral employment practice, 2) a significant statistical disparity in the racial composition of employees benefitting from the practice and those *qualified* to benefit from the practice; and 3) a causal nexus between the practice identified and the statistical disparity. Id.

Appellants have failed to establish a prima facie case of disparate impact discrimination. We will assume, without deciding, that Appellants have identified a "specific, facially-neutral employment practice."[3] Id. at 1268. But, because

---

[3]We doubt that the Legislature's enactment of a statute awarding SRM to 24 employment classes, or even the Department of Children and Family Services' implementation of the statute, can constitute an "employment practice" for Title VII purposes. See American Federation of State, County, and Municipal Employees, AFL-CIO v. State of Washington, 770 F.2d 1401, 1406 (9th Cir. 1985) (declining to analyze, under disparate impact theory, claim that State of Washington's practice of taking prevailing market rates into account in setting lower wages for job classifications predominately composed of women violated Title VII because "the decision to base compensation on the competitive market . . . involves the assessment of a number of complex factors not easily ascertainable, an assessment too multifaceted to be appropriate for disparate impact analysis.") But, for purposes of analysis, we assume that this threshold requirement was met.

Appellants have failed to demonstrate a statistical disparity in the racial composition of employees benefitting from the practice and those *qualified* to benefit from the practice, we conclude that no prima facie case has been demonstrated.

The Supreme Court has cautioned that in analyzing evidence presented in claims of disparate impact discrimination, "statistics based on an applicant pool containing individuals lacking minimal qualifications for the job would be of little probative value." Watson v. Fort Worth Bank and Trust, 108 S.Ct. 2777, 2790 (1988). Here, SRM is only granted to 1) individuals employed in one of the specified occupations if 2) the persons spend 75% of their time interacting with forensic clients. Therefore, to establish the statistical disparity element, the Employees would have had to prove that despite meeting both of these requirements, a disproportionate percentage of blacks were denied SRM.

Although the Employees asserted that they spend 75% of their time interacting with forensic clients, they presented *no* evidence that they held, were qualified for, or even desired one of the 24 delineated positions. Mere assertion that they encountered identical levels of patient conduct is insufficient. Under the statute, SRM does not attach to the conditions of the working environment alone, but also requires the achievement of a level of employment classified by the

6

statute.  Notably, the employees have not alleged that they were prohibited -- *in any way* -- from serving in one of the 24 delineated positions.[4]  They assert an entitlement to the benefits of these positions on the basis that their jobs require comparable levels of time and exposure to risk.  By doing so, the employees ignore that other factors -- beyond exposure to risk -- distinguish the positions: they require different level of education, a different kind of work and represent different jobs.[5]  Without asserting a legally cognizable statistical disparity, the Employees have failed to establish a prima facie case.

Notably, were we to assume, for purposes of argument, that Employees established a prima facie case, the State has demonstrated that the discrepancy in retirement benefits is "job related to the position in question and consistent with business necessity."  42 U.S.C. § 2000e-2(k)(1)(A)(i).  The State has demonstrated that the differential in benefits reflects the market rates for the affected classes.

---

[4]The Employees allege no statistical disparity between the number of African-Americans qualified to serve as dieticians, psychologists, nurses and the 21 other statutorily delineated positions earning SRM and the number of African-Americans actually serving in the positions.

[5]In those cases where we have accepted a district court's expansion of the scope of the "qualified" pool for purposes of statistical analysis, there was some factor prohibiting a class of employees' participation in the disputed sector of the labor market.  See, e.g., Joe's Stone Crab, 220 F.3d at 1277 (noting district court's consideration of total women in Miami area earning a certain salary as "qualified pool" instead of merely those women applying for disputed position because court found that employer's reputation of refusing to hire women lead to self-selection out of pool).  Again, here there is no alleged prohibiting factor: the employees do not assert that they were prevented from holding any of the 24 delineated positions.

See MacPherson v. Univ. of Montevallo, 922 F.2d 766, 772 (11th Cir. 1991) (accepting employer's need to compensate certain employees at higher market rates as legitimate business reason for employment practice challenged under a disparate impact theory). We are reminded of the Supreme Court's caution that "Congress did not intend by Title VII, however, to guarantee a job to every person regardless of qualifications. . . . What is required . . . is the removal of artificial, arbitrary, and unnecessary barriers. . . ." Griggs v. Duke Power Co., 91 S. Ct. 849, 853 (1971). Title VII does not guaranty the provision to these Employees of all of the benefits that the Florida Retirement System has to offer. Instead, Title VII protects them from the discriminatory withholding of such benefits. Here, FRS's limitation of certain benefits to particular classifications of employees reflects a reasonable reaction to market forces, rather than some "artificial, arbitrary [or] unnecessary" barrier.

**AFFIRMED.**